IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PURE WATER COMMITTEE OF <br> WESTERN MARYLAND, INC. et al. <br><br> Plaintiffs <br><br> v. <br><br> MAYOR AND CITY COUNCIL OF <br> CUMBERLAND, MARYLAND, et al. <br><br> Defendants | * <br> * <br> * <br> *     Case No. JFM 01 CV 2611 <br> * <br> * <br> * |

**MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION FOR SUMMARY JUDGMENT**

The City of Frostburg, by and through its City Attorney, Jeffrey S. Getty, submits this Memorandum of Law in Support of the City's Motion for Summary Judgment. A review of the pleadings, depositions, answers to interrogatories, stipulations and affidavits show that there is no genuine issue as to any material fact and that the City of Frostburg is entitled to summary judgment as a matter of law. Although there is a dispute between the Plaintiffs and Defendants regarding the risks and benefits of introducing fluoride into the public drinking water for the City of Frostburg, these disputes are not material issues of fact which would preclude resolution of the Plaintiffs' claim on the basis of this Motion for Summary Judgment.

## I.  FACTUAL BACKGROUND

### THE CITY OF FROSTBURG

The City of Frostburg, Maryland ("the City") is a municipal corporation organized and existing pursuant to Md. Code Ann. Article 23A, Section 1, et seq. The State of Maryland has delegated its police powers to the City pursuant to Article 23A, Section 2(a). Pursuant to the delegation of authority from the State of Maryland, the City has adopted a charter to govern the operation of the municipal government. The Frostburg Charter (hereafter the "Charter") authorizes the City to "establish, own, purchase, control, operate, maintain, manage or regulate a water supply system and a sewage disposal system". See, Article V, Section 502(51) of the Charter. The Charter further specifically provides in Article X, Section 1001 the following:

The City of Frostburg shall have the power:

(a) To construct, operate and maintain a water system and water plant.

(b) To construct and operate a sanitary sewage system, a sewage treatment plant, and/or storm water sewers.

The Charter generally empowers the Council to act to preserve and protect the health of the City and its citizens. Article V, Section 502(32).

The City's legislative and policy making authority is vested in a City Council consisting of the Mayor and four council members. See, Article III, Section 301 of the Charter (Exhibit 1, selected portion of Charter attached). The Mayor and Council currently have four year terms, however, prior to June 2002, the Mayor and Council's terms were for only two years. As a result, every two years in June there was a municipal election and the Mayor and Council assumed their position on the first Monday in July following the election.

## FROSTBURG MUNICIPAL WATER SUPPLY SYSTEM

Pursuant to the authority of the Charter, the City of Frostburg has, for almost seventy-five years, owned and operated a municipal water supply distribution system. The City purchased and improved a reservoir and watershed which is located in Garrett County, Maryland and is known as the Piney Dam Reservoir and Water Shed Area. See, e.g. Affidavit of Andrew Fulghum in support of these factual contentions, Exhibit 2. The City of Frostburg also undertook the expense to construct, improve and maintain a water filtration plant which is located on Big Savage Mountain in Allegany County, Maryland. From the water filtration plant, treated, potable water is distributed to the municipal water system for the City.

There are numerous small, unincorporated communities in and around Frostburg which have historically depended on small water companies or individual wells to supply their water needs. As these communities grew or the well or water companies were unable to supply water which met the current federal and state standards for clean water, these areas located outside the City limits requested the City to supply their water needs. To accommodate these needs, the City entered into a number of water agreements with the

Board of Commissioners of Allegany County, Maryland (hereinafter "Allegany County").  The City of Frostburg sells water to Allegany County which in turn resells the water to various rural areas which are within the County's jurisdiction but outside the City limits of Frostburg. Under this system, Frostburg supplies the public drinking water to Allegany County for redistribution to Eckhart Mines, Hoffman, Zihlman, Vale Summit, Carlos/Shaft and Grahamtown as well as providing water back-up for numerous small towns which are located in the Georges Creek region.  Finally, there are a number of homes which have been built on Big Savage Mountain between the filtration plant and the City limits.  As these properties were built, the City allowed them to tap onto the water line to supply their homes and they are billed directly by the City.

As a result of the above-described arrangement, the City of Frostburg currently sells potable, treated water to the citizens of Frostburg within the City limits, to Allegany County for redistribution to other communities located in and around Frostburg and to less than 100 homes outside the City who were able to tap onto the water lines between the filtration plant and the City limits.

## THE FLUORIDATION DEBATE

Although the American Dental Association and the United States Public Health Service have endorsed the optimal fluoridation of community water supplies as safe and effective public health measures since 1950, the City did not introduce fluoride into its water supply until July 2000. The decision by the City to begin to fluoridate its water was made by the City government after a municipal election was held in June, 2000.  The subject of fluoridating the water supply was a major issue in the municipal election.  The incumbent mayor, John Bambacus, was the only incumbent office holder to publicly support fluoridation of the water supply.  Four challengers for City Council positions supported fluoridation of the water supply in contested races against other opponents.  The four candidates, Robin Gorrell, Jeffrey Rhodes (a dentist), John Ralston and James Cotton all publicly supported fluoridation of the drinking water supply in that election. Mayor Bambacus and all four of the pro-fluoride candidates were elected to the City Council and upon assuming their position in July, 2002, at the first meeting of the newly elected council, voted unanimously to

begin fluoridating the public water supply. After study and review with the outside engineering firm of Whitman, Requardt & Associates, the City acquired the equipment and began to optimally fluoridate the water supply at 1 part per million with sodium fluoride.

This exercise of the democratic processes prompted the opponents of the fluoridation to file the instant lawsuit to deny the citizens of Frostburg the right to decide this issue of public health for themselves.

**FLUORIDE RESULTS IN NO PHYSICAL INJURY TO PLAINTIFFS**

There is a dispute in this case between the Plaintiffs and the Defendants on the issue of whether fluoridation is beneficial[1] or detrimental[2] to consumers of the treated water. This issue, however, is not a material issue of fact in dispute because the Plaintiffs conceded from the very outset of this litigation that the introduction of fluoride into the water system of the City of Cumberland and the City of Frostburg does not result in an injury to the Plaintiffs. In discovery, Co-Defendant, the City of Cumberland, propounded Interrogatories to the Pure Water Committee of Western Maryland, Inc., one of the Plaintiffs herein, and asked the following:

> Interrogatory No. 5: Describe with particularity the injury you allege will be sustained by your members as a result of the City of Cumberland's fluoridation of the public water supply.
>
> Answer: On the advice of counsel, I respectfully decline to answer this question as it lacks relevancy to the pending proceeding.

---

1 The Defendants have identified Ernest Newbrun, Professor Emeritus of Oral Biology and Periodontology at the University of California San Francisco as an expert witness. It is Dr. Newbrun's opinion that the safety, efficacy and practicality of water fluoridation in reducing decay has been amply documented. He notes that it is a public health measure endorsed by every U.S. Surgeon General for the past forty years as well as virtually every other medical, dental and other health organization. He denies there is any credible evidence the water containing an optimal concentration of fluoride has adverse health affects and believes that it produces a public health benefit by decreasing the incidents of dental carries. See Exhibit 3 attached.

2 The Plaintiffs have produced several experts who allege that the introduction of fluoride is detrimental to the public health. Dr. David Kennedy is typical of the opinions expressed. He believes that the introduction of fluoride causes fluorosis, see Kennedy depo. at pp. 38; delays the eruption of teeth, Kennedy depo. at pp. 45; results in a premature onset of puberty, Kennedy depo. at pp. 47; causes damage to the thyroid gland, Kennedy depo. at pp. 48; and can result in reduced IQ, Kennedy depo. at pp. 53. (Kennedy depo. Exhibit 4 attached).

See Exhibit 5 attached.

When pressed for an answer, the Plaintiffs stipulated that the introduction of fluoride into the drinking water of either the City of Cumberland or the City of Frostburg has not resulted in and will not result in a physical injury to the Plaintiffs. The parties then entered into a stipulation to govern this litigation providing the same. See Stipulation attached as Exhibit 6. Given the Plaintiffs' position that there is no physical injury to them from the ingestion of fluoride, it is unnecessary for this Court to consider and resolve the dispute between the Plaintiffs' experts and the Defendants' expert over the safety and efficacy of the fluoridated public drinking water since it is not a dispute which needs to be resolved to address the instant Motion for Summary Judgment.

## II. STANDARDS FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate if the moving party can show that "there is no genuine issue of material fact" and that it is "entitled to judgment as a matter of law". Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The movant bears the initial burden of showing, through evidence which would be admissible at trial, that a "fair minded jury could [not] return a verdict for the [Plaintiff]". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). If the movant makes this preliminary showing, the burden shifts to the opposing party to delineate, with supporting admissible evidence, an issue of material fact. The Court is required to view that evidence in the light most favorable to the non-movant. A "mere scintilla of evidence in support of the Plaintiffs' position", however, shall not suffice. See, Anderson, 477 U.S. at 252.

## III. ARGUMENT

### (1) THE PLAINTIFFS LACK STANDING TO BRING THIS CLAIM.

The Plaintiffs cannot maintain this action as they lack standing to prosecute it. The Plaintiffs have not and cannot allege a direct injury which would give them standing to challenge the City of Frostburg's action in the pending case. The requirement for a concrete, real and identifiable injury is a predicate to the

Court's consideration of the Plaintiffs' claims.

The Plaintiffs have initiated this action under 42 U.S.C. §1983. That statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution or laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

Courts have made it clear that to state a claim for relief under 42 U.S.C. §1983 the Plaintiffs must establish that (1) they were deprived of rights secured by the Constitution or laws of the U.S. and (2) the alleged deprivation was committed under color of state law. See, American Manufactures Mutual Insurance Co. v. Sullivan, 526 U.S. 40, 49-50, 143 L. Ed. 2d 130, 143, 119 S. Ct. 977 (1999).

In order to prosecute an action under Section 1983, the Plaintiffs must have standing. The Courts have long established the need for a plaintiff to allege and prove a direct specific injury. See, Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, 488 (1923). The Courts have historically established that a concerned citizen may not invoke judicial review simply to vindicate a belief in the need for lawful conduct by Congress or public officials but standing is founded upon a distinction between a direct, concrete injury and some other abstract general injury. Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 226-227, 94 S. Ct. 2925, 41 L. Ed. 2d. 706 (1974). The Supreme Court has rejected the concept of using the federal judiciary as an ombudsman of the general welfare to review complaints of plaintiffs asserting constitutional violations. To give standing and establish the jurisdictional requirements, a plaintiff must show "injury in fact", causation and redressability. See, Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 180, 120 S. Ct. 693, 145 L. Ed. 2d. 610 (2000).

Under the Supreme Court's current view, to have standing to prosecute this claim, the Plaintiffs must establish the following:

    1.    They have suffered an injury in fact which is concrete and particularized, actual or imminent, not conjectural or hypothetical;

      2.      The injury is fairly traceable to the challenged action of the Defendant; and

      3.      That it is likely as opposed to merely speculative that the injury will be redressed by a favorable decision.

See, Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 119 L. Ed. 2d. 351, 112 S. Ct. 2130 (1992).

The Plaintiffs in this case do not have standing to prosecute this action. They have specifically disclaimed that the introduction of fluoride into the public drinking water system of the City of Frostburg will result in an injury to them. They do not contend that they have, will or can suffer the injuries and losses which their experts contend can arise from the ingestion of drinking water which has been optimally fluoridated at one part per million. Rather, the Plaintiffs herein have approached this dispute as constitutional ombudsmen, contending that the City of Frostburg, the City of Cumberland, Allegany County, Maryland and the LaVale Sanitary Commission have acted contrary to the Constitution. They are asking this Court to become involved and rule on the constitutional issue. The wisdom of prior Court decisions regulating standing to bring these types of action is apparent in the Plaintiffs' attempted use of the statute. The Plaintiffs have not chosen to litigate the nature and extent of any injury they contend will occur as a result of the actions of the Defendants. Instead, they contend that simply because they object, their mere objection allows them to assert a constitutional issue without ever alleging, let alone proving, that they had been injured by the acts of the Defendant. This is precisely the type of theoretical application for relief to the federal courts which the decisions interpreting the standing requirements was designed to prevent.

In addressing a similar argument, the Supreme Court noted:

> Although they claim that the Constitution has been violated, they claim nothing else. They fail to identify any personal injury suffered by the Plaintiffs as a consequence of the alleged constitutional error other than the psychological consequence presumably produced by observation of conduct with which one disagrees. That is not an injury sufficient to confer standing under Article III even though the disagreement is phrased in constitutional terms. (emphasis in the original)

Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 485-486, 102 S. Ct. 752, 70 L. Ed. 2d. 700 (1982).

Having concluded that the introduction of fluoride into the public drinking water system for the City of Frostburg and the other Defendants does not result in a physical injury to the Plaintiffs, they are left to argue that their injury is merely a constitutional injury. That injury alone is insufficient to give the Plaintiffs standing, to ask the Court to proceed to rule on the merits of their claim. On that basis, the Defendants are entitled to summary judgment as a matter of law.

**(2)  FROSTBURG'S DECISION TO FLUORIDATE THE WATER SUPPLY WAS A PROPER EXERCISE OF THE POLICE POWERS OF THE MUNICIPALITY.**

On July 5, 2002 when the Mayor & City Council voted unanimously to introduce fluoride into the water supply of the City of Frostburg, it acted pursuant to the delegation of police powers from the Maryland Legislature to the City of Frostburg. Md. Code Ann. Article 23A, Section 2(a) and Article 5-502(32) of the City Charter specifically authorize the City to protect and preserve the health of the City and its inhabitants.

It is well established that the decision to introduce fluoride into the public drinking water is a valid use of the police powers of the municipality. See, Kaul v. City of Chehalis, 45 Wash. 2d. 616, 277 P.2d. 352 (1954); Baer v. City of Bend, 206 Or. 221, 292 P.2d. 134 (1956); Dowell v. City of Tulsa, 273 P.2d. 859 (Okl. 1954); DeAryan v. Butler, 260 P.2d. 98, 102 (Calif. App. 1953). cert. denied 347 U.S. 1012. See, e.g. 7 McQuillen Mun. Corp. (3rd Ed.), Section 24.265.10. In Kaul v. City of Chehalis the Court noted the following:

> The State, under its police power, has the right, and it is its duty, to protect its people in their health and general welfare. The very existence of government, as well as security of the social order, depends upon this right. This is especially true as to the health of the people, which affects every man, woman and child within the state. (omitting citations)

Kaul, 277 P.2d. at 354

The decision by the Mayor and Council of Frostburg to fluoridate the water supply was a valid exercise of police powers which have been delegated to the City of Frostburg. The Plaintiffs' contend that that exercise has infringed upon their constitutional rights. The Plaintiffs allege that the fluoridation of the

–8–

public water supply constitutes medication or more generally mass medication. They further contend that this medication, through the drinking water system, infringes on their constitutional rights. The position is unfounded.

The contention that fluoridation of the water supply constitutes medication has been considered and rejected by numerous courts. See, Baer v. City of Bend, 292 P.2d. at 140; Dowell v. City of Tulsa, 273 P.2d. at 864. The Plaintiffs have not and cannot allege that the sodium fluoride used by Frostburg is regulated as a drug by the Food and Drug Administration. It is not regulated.

In commenting on this argument, Dr. Ernest Newbrun, the Defendants' expert herein, states that the introduction of fluoride into the public water supply is intended to prevent disease, not treat, cure or heal existing conditions. See Exhibit 3, page 16. Dr. Newbrun further opines:

> "It is analogous to the fortification of breads and cereals with vitamins and iron, milk with vitamin D, fruit juices with vitamin C, to prevent nutritional deficiencies and the addition of iodine to table salt to prevent goiter."

Dr. Newbrun's opinion is consistent with a number of courts who have rejected the Plaintiffs' argument. In Dowell v. City of Tulsa, 273 P.2d. at 864, the Court noted:

> . . . the City of Tulsa is no more practicing medicine or dentistry . . . or selling a drug than a mother would be who furnishes her children a well-balanced diet, including foods containing vitamin D and calcium to harden bones and prevent rickets, or lean meat and milk to prevent pellagra. No one would contend that this is practicing medicine or administering drugs.

In rejecting a similar argument, the Court in Baer v. City of Bend, 292 P.2d. at 140 noted:

> We see no difference from a constitutional standpoint between introducing chlorine into a water supply to remove impurities and thereby safeguard the public and introducing fluorides to reduce the incidents of dental decay among children and thereby promote the public health and general welfare.

These arguments are particularly compelling in the instant case as the Plaintiffs have acknowledged and stipulated that they will not sustain an injury as a result of the ingestion of fluoridated drinking water. Fluoridation of the water supply is simply not medication. As a result, Plaintiffs have no basis to sustain their allegation that Frostburg violated due process, equal protection, right to privacy or any other personal liability guaranteed under the Constitution.

The City of Frostburg exercising its validly delegated police powers, determined that it is in the public's health to fluoridate the drinking water supply. It is undisputed that such fluoridation does not cause any physical injury. Therefore, there can be no contention that the Mayor & City Council abused their discretion or in any way infringed the Plaintiffs' constitutional rights by introducing fluoride into the water system. The Plaintiffs' efforts to raise the constitutional issue must fail as a matter of law.

### (3) FROSTBURG DID NOT ABRIDGE PLAINTIFFS' RIGHT TO VOTE.

The argument raised by the Plaintiffs that the City of Frostburg has somehow violated the right to vote is without merit. Apparently, the Plaintiffs contend that because there was a municipal election in the City of Frostburg where candidates, both in favor and opposed to fluoridation of the drinking water supply, stood for public office they had a constitutional right to vote in the election because they buy water from Frostburg. The Plaintiffs suggest that since water is distributed outside the City of Frostburg, those Plaintiffs who reside outside the City limits were disenfranchised

> Article VI, Section 601 of the Frostburg Charter provides for voter qualifications:
>
> > Every person who (a) is a citizen of the United States, (b) is at least eighteen years of age, (c) has resided in the City of Frostburg for at least thirty days preceding any municipal elections, and (d) is registered in accordance with the provisions of this Charter shall be a qualified voter of the City. Every qualified voter of the City shall be entitled to vote at any and all City elections.

The Charter clearly establishes the requirements to be eligible to vote in a Frostburg City Municipal

–10–

Election.  There is nothing invalid in the requirements put forward in this Charter provision nor in their application.  Rather, the Plaintiffs make the extraordinary argument that because the City of Frostburg could take action which may affect people who reside outside of the City limits, any such action represents a denial of the non-resident's right of suffrage.  This argument is wholly without merit as it is apparent that there is no constitutional right for individuals who reside outside the City limits of the City of Frostburg to vote in City elections.  The Plaintiffs' reference in the Amended Complaint to <u>Gore v. Bush</u>, 531 U.S. 98 (2000) does not apply to these circumstances.

      Moreover, the Plaintiffs' argument completely misses the point.  The City of Frostburg sells water to Allegany County for redistribution to other areas which are in need of safe water.  A small number of citizens of Allegany County who reside outside the City limits receive water directly from the City of Frostburg due to their proximity to the water lines, but every single resident of Eckhart Mines, Hoffman, Zihlman, Grahamtown, Vale Summit, Carlos, Shaft, the Georges Creek area or anyone else getting water from Frostburg is represented by the Allegany County Commissioners.  Every one of those citizens who otherwise meet voting qualifications have a right to vote for their local government, albeit county government.  If, as an issue of democratic government, these people desire for action to be taken which is different than policies adopted by the City of Frostburg, they can petition the County government to redress their grievances.  Having amended their complaint to add The Board of County Commissioners of Allegany County as a defendant, Plaintiff effectively concedes that there is no abridgement over right of suffrage.  No one who resides outside the City limits of Frostburg is required to purchase water which comes from the City's distribution system.  These jurisdictions and these individuals who reside outside the City have public water from the City of Frostburg because they have <u>requested</u> it.  The City of Frostburg has agreed to share its water resources with the surrounding region.  This is a mutual agreement between the parties and in no way abridges anyone's right of suffrage.  There is certainly no constitutional issue presented.

      **(4)  THE CITY OF FROSTBURG INCORPORATES THE REASONING AND CITATIONS PUT FORWARD IN THE CITY OF CUMBERLAND'S MOTION FOR SUMMARY JUDGMENT.**

The City of Frostburg hereby incorporates by reference the Motion for Summary Judgment and Memorandum of Law in Support of Motion for Summary Judgment filed by Co-Defendant, City of Cumberland.

### IV. CONCLUSION

For the foregoing reasons, the City of Frostburg moves this Honorable Court to enter summary judgment in its favor on all claims raised by the Plaintiffs herein.

GEPPERT, McMULLEN, PAYE & GETTY

By    A/s/@ Jeffrey S. Getty
      JEFFREY S. GETTY
      City Attorney
      Federal Bar No. 05321
      21 Prospect Square
      Cumberland, Maryland 21502
      (301) 777-1515
      Attorneys for City of Frostburg

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of June, 2003, a copy of the aforegoing Memorandum of Law in Support of the City's Motion for Summary Judgment was mailed, postage prepaid, to William J. Trozzo, Esquire, Trozzo, Lowery & Weston, 75 Greene Street, Cumberland, Maryland 21502, Attorneys for Plaintiffs; H. Jack Price, Esquire, 61 Greene Street, Cumberland, Maryland 21502, Attorneys for Mayor and City Council of Cumberland; Stephen C. Wilkinson, Esquire, 220 Washington Street, Cumberland, Maryland 21502, Attorney for Allegany County, Maryland and to Edward C. Crossland, Esquire, 1 Washington Street, Cumberland, Maryland 21502, Attorneys for LaVale Sanitary Commission.

GEPPERT, McMULLEN, PAYE & GETTY

By    A/s/@ Jeffrey S. Getty
      JEFFREY S. GETTY