IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PURE WATER COMMITTEE OF | * | |
| WESTERN MARYLAND, INC., et al. | * | |
| | * | |
| v. | * | Civil No. JFM-01-2611 |
| | * | |
| MAYOR AND CITY COUNCIL OF | * | |
| CUMBERLAND, MARYLAND, et al. | * | |
| | ***** | |

MEMORANDUM

Pure Water Committee of Western Maryland, Inc. ("Pure Water"), William Frederick White, Lou Hedrick, Arch Baker, and Carolyn Robinette have brought suit under 42 U.S.C. § 1983 against the Mayor and City Council of Cumberland, Maryland, the Mayor and City Council of Frostburg, Maryland, the Evitts Creek Water Company, Inc. ("Evitts Creek"), the Laval Sanitary Commission, Inc., and the County Commissioners of Allegany County, Maryland. Plaintiffs allege that defendants deprived them of their rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, as well as their rights under Article I of the Maryland Constitution, when defendants introduced fluoride into public water supplies. The Mayor and City Council of Cumberland, the Mayor and City Council of Frostburg, and Evitts Creek have moved for summary judgment. Because plaintiffs lack standing, I will grant defendants' motion.[1]

---

[1] The Laval Sanitary Commission and the County Commissioners of Allegany County have not moved for summary judgment. Because plaintiffs lack standing, however, I will *sua sponte* grant summary judgment in favor of these defendants as well.

1

I.

A.

During the late 1930s and early 1940s, scientists discovered that tooth decay was less prevalent in areas where the water supply contained a greater concentration of fluoride. (Letter from Newbrun to Getty of 5/2/03, Frostburg Ex. 3, at 6.) Researchers have subsequently shown that individuals who continually consume fluoridated water lose fewer teeth and have fewer decayed, missing, and filled teeth. (*Id.* at 6-7.) As a result of this research, communities across the United States and around the world have added fluoride to their water supplies. (*Id.* at 8.) Moreover, every United States Surgeon General for the past forty years has endorsed water fluoridation. (*Id.* at 18.)

There are, nonetheless, opponents to water fluoridation. Fluoridation opponents contend that fluoridation causes tooth discoloration, delayed tooth eruption, the premature onset of puberty, brain damage, cancer, and increases the risk of hip fracture. (*Id.* at 9-16.) Various studies, however, have cast serious doubt on these claims. (*See id.*) Moreover, plaintiffs have stipulated in this action that the addition of fluoride into the water systems of the City of Cumberland and the City of Frostburg will cause them no physical harm. (Stipulation, Frostburg Ex. 6, ¶ 4.)

B.

The City of Frostburg ("Frostburg") owns the Piney Dam Reservoir in Garrett County. Frostburg draws water from the reservoir to a water filtration plant in Allegany County. After the water is treated at the filtration plant, it is distributed to Frostburg residents. (Fulghum Aff., Frostburg Ex. 2, ¶ 4.) Frostburg also provides water to: (1) the Allegany County Commissioners, who in turn provide water to a number of small towns in Allegany County; (2) small towns on Georges Creek; and (3)

individuals living on Big Savage Mountain. (*Id.* ¶ 5.)

Frostburg's lawmaking authority is vested in a city council, which consists of the Mayor and four council members. Frostburg, Md., City Charter, art. III, § 301. In June 2000, Mayor John M. Babacus was reelected. Four new council members were also elected. The four new council members all supported water fluoridation as part of their campaigns. On July 5, 2000, the new city council unanimously agreed to fluoridate the Frostburg water supply. (Fulghum Aff., Frostburg Ex. 2, ¶ 6.) After consulting with an outside engineering firm, Frostburg began fluoridating its water supply. (*Id.* ¶ 7.)

The City of Cumberland ("Cumberland") owns and operates a water treatment plant in Bedford County, Pennsylvania.[2] Cumberland provides water from this plant to its residents. Cumberland also provides water to residents of Allegany County, Maryland, Bedford County, Pennsylvania, and Mineral County, West Virginia. (Cumberland's Mem. at 2.) The land on which the water treatment plant is located is owned by Evitts Creek. (*Id.*)

In May 2000, Cumberland held a referendum election, which resulted in the repeal of a city charter provision prohibiting water fluoridation.[3] (*Id.* at 5-6.) After litigation in Maryland state courts

---

[2]Cumberland has provided no affidavits or deposition testimony supporting its motion for summary judgment. Because plaintiffs do not dispute Cumberland's factual contentions, however, I will accept the statement of facts in Cumberland's motion for summary judgment as true for purposes of deciding this summary judgment motion.

[3]Water fluoridation has a contentious political history in Cumberland. In March 1963, the city council adopted a charter provision prohibiting water fluoridation. The charter provision was approved in a special election in May 1963. (Cumberland's Mem. at 6.) In August 1988, the mayor and city council approved a charter amendment repealing this provision. The charter amendment was narrowly approved by the citizens of Cumberland. (*Id.*) In 1990, fluoride opponents staged a successful petition drive to again include a charter provision prohibiting water fluoridation. On May 15, 1990, a charter

3

challenging the referendum election failed,[4] Cumberland began fluoridating its water supply. (*Id.* at 8.)

Pure Water is a Maryland corporation. (Am. Compl. ¶ 1.) The individual plaintiffs in this case are residents of Maryland, Pennsylvania, and West Virginia, who receive water from either Cumberland or Frostburg. (*Id.* ¶¶ 2-6, 27.) Plaintiffs, however, are not residents of either Cumberland or Frostburg. (*Id.* ¶ 27.) Plaintiffs filed suit in August 2001. Their amended complaint alleges that Cumberland and Frostburg's enactment of resolutions to fluoridate municipal water supplies violates their constitutional rights. (*Id.* ¶ 38.)

II.

The requirement that a plaintiff have standing is based upon the idea of separation of powers. *Allen v. Wright*, 468 U.S. 737, 752 (1984). *See generally* 1 Laurence H. Tribe, *American Constitutional Law* § 3-14 (3d ed. 2000). That is, the doctrine of standing is "founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Wright*, 468 U.S. at 750 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)); *see also Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 319 (4th Cir. 2002). Thus, a standing inquiry is "especially rigorous" when reaching the merits of the dispute would force a court to determine whether the actions

---

provision prohibiting fluoridation was approved in a general election. (*Id.* at 6-7.)

[4]The majority of signatures supporting the petition to repeal the charter provision prohibiting fluoridation were submitted on postcards. The postcards had been distributed by the Allegany/Garrett Dental Society to Cumberland's registered voters. (Cumberland's Mem. at 7.) In March 2000, fluoride opponents, including Pure Water, filed suit in state court seeking: (1) an injunction against action on the petition, and (2) a declaratory judgment that the postcards were not a proper form of petition. (*Id.*) The state circuit court granted Cumberland's motion to dismiss, and the fluoride opponents appealed to the Court of Special Appeals of Maryland. While the appeal was pending, the referendum election was held and the provision prohibiting fluoridation was repealed. As a result, the Court of Special Appeals dismissed the fluoride opponents' appeal as moot. (*Id.* at 8.)

of other government branches are constitutional. *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997).

To establish standing, a plaintiff must show: (1) an injury in fact; (2) the injury is traceable to the conduct of the defendant; and (3) the injury will likely be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000).[5] To show an injury in fact—the only disputed element here—a plaintiff must show "an invasion of a legally protected interest which is concrete and particularized, as well as actual or imminent." *Gaston Copper*, 204 F.3d at 154. In other words, a plaintiff must demonstrate, "regardless of the actual existence of a claimed injury or its subjective importance, an individuated harm impacting specifically upon him in a concrete manner." 1 Tribe, *supra*, § 3-16, at 400. Plaintiffs attempt to prove two injuries here. Neither satisfies the injury in fact requirement.

A.

Plaintiffs first contend that they have been medicated without their informed consent in violation of their due process rights under the Fourteenth Amendment.[6] (Pl.'s Opp'n at 4.) They rely on the

---

[5]Defendants do not explicitly challenge Pure Water's standing. However, an association has standing to sue on behalf of its members only when: (1) its members have standing to sue in their own right; (2) the interests at stake are germane to the organization's purpose; and (3) neither the claim made nor relief requested requires individual members to participate in the suit. *Laidlaw*, 528 U.S. at 181; *Stasko*, 282 F.3d at 320. As a result, implicit in defendants' argument that plaintiffs lack standing because they cannot show an injury in fact is the contention that Pure Water's individual members lack standing. Thus, Pure Water's standing to sue also turns on the resolution of whether the individual plaintiffs in this case have standing.

[6]Plaintiffs also allege violations of: (1) their due process rights under the Fifth Amendment; (2) equal protection of the laws under the Fourteenth Amendment; and (3) their right to privacy under the Fourth Amendment. (Am. Compl. ¶ 38.) They have, however, failed to allege or establish any facts that implicate any of these constitutional provisions.

proposition that individuals have a "constitutionally protected liberty interest in refusing unwanted medical treatment." *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 278 (1990).  I will assume that reasonable scientists could disagree about whether fluoride is a drug for some purposes.[7]

Water fluoridation, however, is entirely different from the type of invasive and highly personalized medical treatments involved in the cases in which the Supreme Court has recognized a liberty interest in freedom from unwanted medical treatment.  *See Sell v. United States*, ___ U.S. ___, 123 S. Ct. 2174 (2003) (forced administration of antipsychotic drugs on criminal defendant); *Riggins v. Nevada*, 504 U.S. 127 (1992) (same); *Cruzan*, 497 U.S. at 261 (use of life sustaining medical treatment for an individual unable to decline the treatment); *see also Jacobson v. Massachusetts*, 197 U.S. 11 (1905) (mandatory smallpox vaccination).  Moreover, at least in the cases involving the forced administration of anti-psychotic drugs—upon which plaintiffs principally rely—a major concern of the Court has been the potentially adverse side effects of the drugs.  *See Riggins*, 504 U.S. at 134; *Washington v. Harper*, 494 U.S. 210, 229-30 (1990).  Here, as noted above, plaintiffs have

---

[7]The only evidence plaintiffs have introduced to support the contention that fluoridation amounts to medication is an excerpt from the deposition testimony of Dr. David Kennedy, D.D.S.  In his deposition, Dr. Kennedy opined that because the Food and Drug Administration considers fluoride a drug when it is used to prevent disease, fluoride in public water supplies is a medication.  (*See* Kennedy Dep., Frostburg's Reply Ex. 1, at 30; *see also* Pl.'s Opp'n at 2-3.)  To counter plaintiff's contention, defendants have offered the opinion of Dr. Ernest Newbrun, a Professor Emeritus of Oral Biology and Periodontology at the University of California San Francisco.  Dr. Newbrun believes that fluoridation is not medication; rather, it "is analogous to the fortification of bread and cereals with vitamins and iron, milk with Vitamin D, fruit juices with Vitamin C, to prevent nutritional deficiencies and the addition of iodine to table salt to prevent goiter."  (Letter from Newbrun to Getty of 5/2/03, Frostburg Ex. 3, at 16.)

stipulated that they will suffer no physical injury from ingesting fluoridated water. (Stipulation, Frostburg Ex. 6, ¶ 4.) It is not at all clear, therefore, that plaintiffs have a liberty interest in being free from unwanted water fluoridation.

Even if plaintiffs do have such a liberty interest, they have failed to show that it has been infringed here. Quite simply, plaintiffs have failed to show that they are being forced to consume fluoridated water. Plaintiffs still have the choice to avoid drinking the fluoridated water—there are a number of ways, such as purchasing bottled water, to avoid drinking publicly supplied water. Accordingly, plaintiffs have failed to show that they will suffer an invasion of a legally protected interest that impacts specifically upon them in a concrete manner. As a result, plaintiffs lack standing to challenge defendants' actions.

B.

Plaintiffs also contend that they have been subjected to fluoride without having the right to vote in violation of the Fourteenth Amendment to the United States Constitution.[8] (Pl.'s Opp'n at 4.) Apparently, plaintiffs contend that they have been disenfranchised because: (1) they were not allowed to vote in the Cumberland referendum election or the Frostburg city council election; and (2) the results of these elections had a direct impact upon plaintiffs because the elections resulted in the fluoridation of plaintiffs' drinking water. (*See id.*) Plaintiffs have again failed to show an injury in fact because they do not have a right to vote in either Cumberland or Frostburg.

---

[8]Plaintiffs also allege that their rights under Article I of the Maryland Constitution have been violated. Article I, however, does not guarantee individuals the right to vote in municipal elections. *See* Md. Const. art. I, § 1; *Hill v. Mayor and Town Council of Colmar Manor*, 210 Md. 46, 50, 122 A.2d 462, 464 (1956).

A municipal corporation has the power to limit participation in its elections based on residency, even when that municipality engages in actions that affect ineligible voters. *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 68-70 (1978).[9] Both Cumberland and Frostburg limit voter participation to city residents. Cumberland, Md., City Charter, § 162; Frostburg, Md., City Charter, art. VI, § 601. Plaintiffs have introduced no evidence showing that they are residents of either Cumberland or Frostburg. As a result, they have no right to participate in Cumberland or Frostburg elections, and their inability to vote in the elections relevant to this case does not amount to an injury sufficient to confer standing.

A separate order is being entered herewith.

Date: September 4, 2003                           /s/_____
                                                   J. Frederick Motz
                                                   United States District Judge

---

[9]In *City of Tuscaloosa*, residents of Holt, a small town outside Tuscaloosa, Alabama, challenged the constitutionality of Alabama statutes that subjected Holt's citizens to Tuscaloosa's police and sanitary regulations, criminal court jurisdiction, and licensing power without giving Holt citizens the right to vote in Tuscaloosa elections. 439 U.S. at 61-62. The plaintiffs claimed these statutes violated their rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *Id.* at 62-63. The Court disagreed: "[O]ur cases have uniformly recognized that a government unit may legitimately restrict the right to participate in its political processes to those who reside within its borders." *Id.* at 68-69. Although certain municipal acts may have a significant impact on individuals living outside the municipality, "no one would suggest that nonresidents likely to be affected by this sort of municipal action have a constitutional right to participate in the political processes bringing it about." *Id.* at 69.